UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| MILWAUKEE CASUALTY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No.: |
| v. | )<br>)<br>) |
| S & V PROPERTY, LLC, | )<br>) |
| Defendant. | ) |

**COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT**

NOW COMES Plaintiff, Milwaukee Casualty Insurance Company. ("MCIC"), by and through its attorneys, and herein submits its Complaint for Rescission and Declaratory Judgment against Defendant, S & V Property, LLC ("SVP"). In support thereof, MCIC states as follows:

**PARTIES AND JURISDICTION**

1. MCIC is a Delaware company with its principal place of business in Texas.

2. SVP is an Illinois corporation with its principal place of business in St. Charles, Illinois. SVP has two members (Samir Patel and Vipul Patel), both of whom are Illinois citizens.

3. SVP tendered a claim to MCIC in relation to fire damage caused by arson at a commercial property in Marengo, Illinois. SVP seeks $270,000 from MCIC to satisfy the claim.

4. This Court has jurisdiction over this matter under 28 U.S.C. §1332(a)(1) because there is complete diversity of citizenship between MCIC, on the one hand, and SVP, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper under 28 U.S.C. §1391(b)(1) because SVP resides in the Northern District of Illinois. Venue is also proper under §1391(b)(2) because a substantial part of the events giving rise to this dispute occurred in the Northern District of Illinois.

1

6.      Pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure, this Court has authority to declare the rights and obligations of the parties in relation to the terms and provisions of the policy that MCIC issued to SVP.

## THE ARSON CLAIM

7.      SVP owned a commercial building located at 20009-20011 E. Grant Hwy., Marengo, IL 60152 (the "Property").  SVP purchased the Property for $130,000.

8.      Around 11:30 p.m. on June 8, 2017, a fire occurred at the Property.  The fire was extinguished that same evening.  SVP subsequently submitted a claim to MCIC in relation to damage caused by the fire.

9.      Thereafter, MCIC retained Envista Forensics ("Envista") to conduct a fire origin and cause investigation.  Envista found that the fire originated in two entirely unrelated areas within the building, and that it resulted from human involvement using an open flame, likely a match or lighter.  These findings were consistent with arson as the cause of the fire.

## SVP'S MISREPRESENTATIONS REGARDING THE OCCUPANCY AND USE OF THE PROPERTY

10.     On or around December 18, 2016, SVP submitted a Commercial Insurance Application ("Application") to MCIC to obtain insurance for the Property.  [*See* Application, attached hereto as Exhibit 1].

11.     SVP represented the following business use for the Property in the Application: "Lessors Risk to House of Bottles for excess storage" and "Warehouse Storage."  [Exhibit 1, p. 2].  SVP also represented in the Application that the total building area of 4,950 square feet would be occupied and that there would be no "exposure to flammables explosives, [or] chemicals" at the Property. [Exhibit 1, p. 3].

12. In reliance on the Application, MCIC issued Policy Number MBP 1020967 00 to SVP, effective from January 1, 2017 through January 1, 2018 (the "Policy"). [*See* MCIC Policy, attached hereto as Exhibit 2].

13. The "Description of Premises" set forth in the Policy's Declarations provides the following: "Beverage Stores – Lessors Risk Only – Liquor and Wine." [Exhibit 2, p. 30].

14. On or around January 26, 2017, MCIC discovered that the Property was completely vacant. MCIC advised SVP's agent, Heil & Heil Insurance Agency ("Heil"), that it would not agree to insure a completely vacant building and, as a result, MCIC would be cancelling the Policy.

15. In response, Heil spoke with Samir Patel who represented that the Property would be 100% occupied, with part of the building being used as storage for a liquor store named "House of Bottles" and the remainder of the building being leased out to a tenant.

16. As a result of, and in reliance upon, SVP's representations, MCIC agreed not to cancel the Policy.

17. Thereafter, SVP purportedly entered into an "Illinois Commercial Lease Agreement" with a company called "Billy's Custom Flooring" to rent a portion of the Property. The lease had a one year term of February 1, 2017 through January 13, 2018.

18. The remainder of the Property remained entirely unused and vacant.

19. On December 28, 2017, MCIC conducted an examination under oath of Samir Patel in relation to the June 8, 2017 claim, wherein he testified as follows:

> Q. Did you have any storage on the other side of the building that wasn't being rented to Billy?
>
> A. No. It was empty.
>
> Q. It was always empty?

A. Yeah. There was nothing there.

Q. Just to be clear, because I'm not trying to hide anything from you, I saw some things in the documents that said that you stored liquor bottles or extra inventory for the liquor store, something along those lines in the property. Nothing at all?

A. Never. No, never.

Q. So the other side that didn't have Billy in there was completely empty?

A. Nothing in there.

Q. That was always the case, right?

A. Yeah. It was always empty. We never used it.

[*See* Patel Transcript Excerpt, attached hereto as Exhibit 3, pp. 3-4].

## **THE REDEVELOPMENT OF THE PROPERTY**

20. In or before March 2017, SVP partnered and/or contracted with Corey Brackmann ("Brackmann"), of Brackmann Construction Co., to redevelop the Property and a neighboring property (20015 E. Grant Hwy., Marengo, IL 60152) by building an 8,000 square foot shopping center with retail spaces that it could rent to commercial tenants (the "Project").

21. To redevelop the Property, SVP needed to demolish the existing building located on the Property.

22. Demolishing the building on the Property was an integral part of the Project.

23. On March 1, 2017, Dunkin Donuts signed a "Letter of Interest" to lease one of the retail spaces that would be built as part of the Project. SVP subsequently signed two "Building Lease Agreements" relative to the Project, one with Marengo Community Pharmacy and the other with Krishna Liquors, Inc.

4

24. On May 26, 2017, SVP obtained a Special Use Permit from the City of Marengo for "Two Drive-Through Facilities in a Future Commercial Strip Center at 20009 – 20015 East Grant Highway." [*See* City of Marengo Permit, attached hereto as Exhibit 4]. The City of Marengo agreed to issue the permit after SVP submitted an application on April 26, 2017, and the permit request was addressed at a public hearing on May 15, 2017.

25. As of May 22, 2017, SVP had represented to the City of Marengo that it projected $559,164 in "Project TIF Expenses" related to the Project and that it estimated the total cost of the Project at $1,719,500. These representations were made in furtherance of SVP's plan to effectuate the Project and to convince the City of Marengo to approve SVP's request to make TIF funding available so SVP could recover some of the costs associated with the Project from the City of Marengo.

26. On June 6, 2017, Brackmann represented to the City of Marengo in an email that the Project involved four retail spaces with projected sales of $4 million and Dunkin Donuts as one of the tenants.

27. In September 2017, the City of Marengo approved and authorized the execution of a "Tax Increment Financing District Incremental Revenue Redevelopment Agreement Between The City of Marengo and S&V Property, LLC." The agreement enabled SVP to seek reimbursement from the City of Marengo for expenditures that constituted Project TIF Expenses not to exceed $550,000.

28. The Project is slated for completion in July 2018.

## COUNT I – Rescission of MCIC's Policy

29. MCIC incorporates by reference Paragraphs 1 through 28 above as if they were fully set forth herein.

30. SVP misrepresented in the Application that the Property would be completely occupied and that it would be used for warehouse storage for a liquor store. The Policy similarly reflects that SVP misrepresented the following use for the Property: "Beverage Stores – Lessors Risk Only – Liquor and Wine."

31. When faced with cancellation of the Policy, SVP subsequently misrepresented for a second time that the Property would be completely occupied and that it would be used for storage.

32. MCIC relied upon SVP's misrepresentations in the Application when it issued the Policy, including but not limited to, its misrepresentations that the Property would be completely occupied and that it would be used for storage for a liquor store.

33. MCIC also relied upon SVP's misrepresentations in the face of cancellation that the Property would be completely occupied and that it would be used for storage.

34. The occupancy and use of the Property were material facts and circumstances concerning the subject matter of the insurance provided by MCIC under the Policy because, amongst other things, vacant properties are more prone to losses, such as the arson at issue in this lawsuit.

35. The Property was never fully occupied during the term of MCIC's Policy, including but not limited to on June 8, 2017.

36. The Property was not used by a liquor store for storage or for any other purpose during the term of the Policy, including but not limited to on June 8, 2017.

37. SVP, therefore, misrepresented material facts and circumstances concerning the subject matter of the Policy when it submitted the Application to MCIC and, as well, sought to avoid cancellation of the Policy.

38. SVP's misrepresentations concerning the occupancy and use of the Property materially affected the risk that MCIC accepted when it issued the Policy, and agreed not to proceed with cancellation, because MCIC relied upon SVP's misrepresentations and believed that the Property would be fully occupied and used for storage by a liquor store.

39. The actual risk presented by the Property was materially different from the risk that SVP submitted to MCIC to obtain insurance and avoid cancellation.

40. MCIC relied to its detriment on SVP's misrepresentations, which MCIC used to assess the risk and exposure presented by the Property when it agreed to issue the Policy and not to move forward with cancellation.

41. Had SVP disclosed the actual risk and exposure presented by the Property, MCIC would not have issued the Policy or it would have assessed an increased premium commensurate with the actual risk presented by the Property.

42. As a result of the foregoing, it would be unconscionable and manifestly unjust to require MCIC to provide coverage for the June 8, 2017 arson claim when SVP misrepresented the risk to MCIC to obtain the Policy and to prevent it from being cancelled.

43. Under the common law and 215 ILCS 5/154, as the parties can be returned to the status quo pre-contract formation, MCIC is entitled to rescission of the Policy and a ruling that it is void *ab initio*, with SVP receiving a reimbursement of any remaining premium it paid for the Policy.  MCIC is nevertheless refunding the premium paid by SVP for the Policy.

### COUNT II – No Insurable Interest

44. MCIC incorporates by reference Paragraphs 1 through 28 above as if they were fully set forth herein.

45. At the moment of the arson fire on June 8, 2017, SVP fully intended to demolish the building located on the Property.

46. Evidence of SVP's intent on or before June 8, 2017 to demolish the building includes, but is not limited to:

   a) SVP had partnered and/or contracted with Brackmann as its representative and construction manager to effectuate the Project;

   b) SVP had obtained a $80,000 loan from Prairie Community Bank to effectuate the Project;

   c) SVP had escrowed $13,500 for use in effectuating the Project;

   d) SVP had allowed a significant portion of the Property to remain vacant and unoccupied since it had committed to effectuate the Project;

   e) SVP had submitted written applications and other documentation to the City of Marengo seeking at least one permit and its approval for the Project;

   f) The City of Marengo held at least one hearing which addressed the Project; and

   g) SVP had represented to the City of Marengo that it intended to redevelop the Property to turn it into an 8,000 square foot shopping center with a Dunkin Donuts, pharmacy, liquor store and a video gaming business.

47. As of June 8, 2017, SVP had fully and irrevocably committed to demolishing the building because that was a critical part of its plan to redevelop the Property and replace the building with an 8,000 square foot shopping center.

48. The building had no insurable value on June 8, 2017 as a result of the fact that SVP had already fully and irrevocably committed to its demolition.

49. SVP, therefore, had no insurable interest in the building on June 8, 2017.

50. Since SVP had no insurable interest in the building on June 8, 2017, MCIC has no obligation to provide coverage for the arson claim under the Policy.

### COUNT III – 
### Valuation of the Building

51. MCIC incorporates by reference Paragraphs 1 through 28 and 45 through 50 above as if they were fully set forth herein.

52. MCIC pleads Count III in the alternative to Counts I and II set forth above.

53. The limit under the Policy to the extent coverage exists for a loss is $270,000.

54. SVP seeks the full $270,000 limit under the Policy to satisfy the claim.

55. MCIC disputes that the value of the loss on June 8, 2017 was $270,000 or anything even near that amount.

56. Based on the fact that SVP had fully committed to demolish the building to effectuate the Project, the building had a *de minimus* or nominal value at the time of the June 8, 2017 arson fire.

57. The *de minimus* or nominal value of the building is further confirmed by a consideration of various factors, including but not limited to the age of the building, the poor condition of the building, and the absence of usefulness.

58. In light of the foregoing, a dispute exists between MCIC and SVP as to the valuation of the building on the date of the arson fire.

59. MCIC, therefore, seeks a declaration of the building's actual valuation at the time of the June 8, 2017 arson fire consistent with the terms and conditions of the Policy and applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, MCIC respectfully requests that this Court enter judgment in its favor and against SVP, and find and declare as follows:

A. That the Policy is rescinded and that SVP is entitled to a full reimbursement of any premium not already returned to it in connection with the Policy.

B. That the Policy is void *ab initio*.

C. That SVP had no insurable interest in the building located on the Property at the time of the arson fire on June 8, 2017.

D. That MCIC has no obligations in connection with the June 8, 2017 arson fire claim, including but not limited to, any obligation to indemnify SVP for the claim.

E. That the building had a *de minimus* or nominal value at the time of the June 8, 2017 arson fire.

F. That MCIC is entitled to any other relief the Court deems just and proper under the circumstances.

    */s/ Kevin M. Lougachi*
Kevin M. Lougachi
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
150 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Tel: 312.431.3700
Fax: 312.431.3670
klougachi@karballaw.com
*Attorneys for Milwaukee Casualty Insurance Company*